IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARIBU A. WILLIAMS, AP-1400,<br><br>　　　　Petitioner,<br><br>vs.<br><br>ROBERT W. FOX, Warden,<br><br>　　　　Respondent. | No. C 15-3069 CRB (PR)<br><br>ORDER DENYING PETITION<br>FOR A WRIT OF HABEAS<br>CORPUS AND CERTIFICATE<br>OF APPEALABILITY |

　　　　Petitioner was convicted by a jury in Alameda County Superior Court of second degree robbery.  The court also found true the allegation that petitioner had a prior conviction of first degree burglary, a violent felony and a strike, and sentenced him to nine years in state prison.  Petitioner appealed, but the California Court of Appeal affirmed the judgment of conviction and the Supreme Court of California denied review.

　　　　Petitioner then filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 alleging that the trial court prejudicially erred in delivering two written instructions to the jury, which counsel had withdrawn and therefore had not been orally read to the jury by the court.  Per order filed on September 2, 2015, the court found that the petition, liberally construed, stated a cognizable claim under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted.  Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

# BACKGROUND

The California Court of Appeal summarized the procedural and factual background of the case as follows:

> A criminal information was filed on March 20, 2012, by the Contra Costa County District Attorney alleging that appellant had committed second degree robbery ([Cal. Penal Code] §§ 211, 212.5, subd. (c)) of Eric Rojo. The information also alleged appellant was armed with a handgun at the time of the robbery within the meaning of section 12022, subdivision (a)(1), and that he used a handgun in the commission of the offense within the meaning of section 12022.53, subdivision (b). The information further alleged that appellant had a prior conviction of first degree burglary, a violent felony, and a "strike." (§§ 459, 460, subd. (a), 667, subd. (a)(1), 1170.12, subds. (b)–(i)).
>
> A jury trial commenced on March 12, 2013. The evidence material to the issues before us included the following:
>
> On the morning of January 18, 2012, Eric Rojo was walking on 24th Street in Richmond toward his class at the Richmond Civic Center. He had $48 in cash on his person—$3 consisting of three single bills in his pocket, and $45 consisting of one $5 and two $20 bills, in his wallet.
>
> Appellant rode his bicycle on the sidewalk toward Rojo and looked at him. Rojo moved into the street to avoid any confrontation. Appellant rode up to Rojo, stopped, and ordered, "Give me a dollar." Rojo replied, "I don't have a dollar," and kept walking. Appellant then circled around Rojo, blocking his forward progress. Appellant again ordered, "Give me a dollar" and "I'm not playing around." Rojo looked to see if appellant had a weapon. He saw what appeared to be bottom of the handle of a handgun inside the pouch of appellant's black hooded sweatshirt. Rojo was scared and gave appellant the $3 he had in his pocket. Appellant then said, "I know you have more." Rojo pulled out his wallet, showed it to appellant, and handed the rest of his money over to appellant. Appellant rode off on his bike.
>
> Rojo, walked back to his house on 23rd Street. He told his cousin, Ignacio Jaime, that he [had] just been robbed. Jaime said to call the police, but Rojo instead wanted to look for appellant and to call police if they saw him.
>
> Jaime then drove Rojo around in his truck looking for someone wearing a black sweatshirt, a black shirt, blue jeans, and a New York Yankees baseball cap, the clothing Rojo described his assailant wore at the time of the robbery. About 15 minutes later, Rojo saw appellant sitting on his bike and wearing the same clothes he had on at the time of the robbery. Appellant saw them, smiled,

and rode off. As Jaime and Rojo followed, appellant turned, looked, and gestured with his empty hand like he was pointing a gun and firing at them three or four times. The two then stopped and called the police.

Five minutes later, Rojo and Jaime met Richmond Police Officer Ronald Vinson. Dispatch radioed the description of the suspect given to police earlier by Rojo to another Richmond police officer, Ramon Middleton, who saw appellant matching that description, riding a dirt bike.

Officer Vinson took Rojo and Jaime to the location where appellant had been detained. Officer Vinson separated the pair, and showed appellant to each of them. Rojo identified appellant as the man who robbed him, and Jaime identified appellant as the man they had pursued. Officer Middleton searched appellant and found two $20 bills and three $1 bills in his right front pocket. No gun was found.

During the trial, outside the presence of the jury, the court and counsel reviewed the jury instructions to be given. Everyone agreed that they would have to wait to hear testimony to determine whether CALCRIM No. 361, on "Failure to Explain or Deny Adverse Testimony," was applicable to the facts of the case. At that same time, the prosecutor withdrew his request to give CALCRIM No. 375, "Evidence of Uncharged Offense to Prove Identity, Intent, Common Plan, Etc." since he did not introduce any prior offenses.

On March 18, 2013, after the prosecution and the defense rested, and again outside the presence of the jury, the court reviewed with counsel the jury instructions to be given. The prosecutor withdrew his request to give CALCRIM No. 361.[1]

Subsequently, the court read the final instructions to the jury. Among the instructions read to the jury was CALCRIM No. 200, which stated that "[s]ome of the instructions may not apply depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." The court also admonished the jury with CALCRIM No. 355, which told them that "[a] defendant has an absolute constitutional right not to testify."

The court also told the jury that it would provide jury instruction packets for them to take to the jury room and forms that the jurors could use to submit written questions to the court. The court did not read to the jury CALCRIM Nos. 361 or 375, although they appear in the record as part of the filed package of instructions given to the jury.

---

[1] Appellant had chosen not to testify during the trial.

3

> The jury found appellant guilty of second degree robbery, but also found the arming allegation not true.[2]
>
> On April 16, 2013, the prior conviction allegation was tried to the court and found true. The court then imposed the lower term of two years on the robbery conviction and doubled it to four years. The court also imposed a five-year consecutive term under section 667, subdivision (a)(1) for the prior violent conviction, for a total aggregate state prison term of nine years.

People v. Williams, No. A138556, 2014 WL 2815587, at **2–4 (Cal. Ct. App. June 23, 2014) (footnotes renumbered).

## DISCUSSION

A.  Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."

---

[2] The allegation of use of a firearm (§ 12022.53, subd. (b)) had been earlier dismissed by the trial court.~(1CT81, 1RT 19)~

4

Williams v. Taylor, 529 U.S. 362, 412–13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark, 331 F.3d at 1069.

B.     Claim & Analysis

Petitioner claims that delivering the two written instructions to the jury, which counsel had withdrawn and the court had not read to the jury, amounted to a violation of his due process right to a fair trial.  The claim is without merit.

It is well established that a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. Estelle v. McGuire, 502 U.S. 62, 71–72 (1991).  To obtain federal

habeas relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Id. at 72. The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

Even if the instructional error resulted in constitutional error, the reviewing federal habeas court must also find that the error resulted in actual prejudice before relief may be granted. See Calderon v. Coleman, 525 U.S. 141, 146 (1998). The court must find that the error had a substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Here, it is undisputed that the jury received two written instructions that were withdrawn by counsel and not read to the jury by the court – CALCRIM No. 361 (Failure to Explain or Deny Adverse Testimony) and CALCRIM No. 375 (Evidence of Uncharged Offense to Prove Identity, Intent, Common Plan, etc.). The two instructions at issue in the jury's packet read as follows:

> 361. TO EXPLAIN OR DENY ADVERSE TESTIMONY
>
> If the defendant failed in (his/her) testimony to explain or deny evidence against (him/her), and if (he/she) could reasonably be expected to have done so based on what (he/she) knew, you may consider (his/her) failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilty. The People must still prove the defendant guilty beyond a reasonable doubt.
>
> If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure.

Clerk's Tr. at 213.

375. OF UNCHARGED OFFENSE TO PROVE IDENTITY, INTENT, COMMON PLAN, ETC.

The People presented evidence that the defendant committed ((another/other) offenses/the offenses of _____) that (was/were) not charged in this case.

The People presented evidence (of other behavior by the defendant that was not charged in this case/that the defendant _____).

You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the (uncharged offenses/acts). Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

*If the People have not met this burden, you must disregard this evidence entirely.*

If you decide that the defendant committed the (uncharged offenses/acts), you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:

The defendant was the person who committed the offenses alleged in this case (./; or)

The defendant acted with the intent to _____ in this case (./; or)

The defendant had a motive to commit the offenses alleged in this case (./; or)

The defendant knew _____ when (he/she) allegedly acted in this case (./; or)

The defendant's alleged actions were the result of mistake or accident (./; or)

The defendant had a plan or scheme to commit the offenses alleged in this case (./; or)

The defendant reasonably and in good faith believed that _____ consented (./; or)

The defendant _____.

In evaluating this evidence, consider the similarity or lack of similarity between the uncharged (offenses/ and acts) and the charged offenses.

Do not consider this evidence for any other purpose except for the

7

1 limited purpose of \_\_\_\_\_.

2 Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

3
4 If you conclude that the defendant committed the (uncharged offenses/acts), that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that
5 the defendant is guilty of \_\_\_\_\_ or that the \_\_\_\_\_ has been proved. The People must still prove (the/each) (charge/ and allegation)
6 beyond a reasonable doubt.

7 Id. at 215-16 (emphasis added).

8 The California Court of Appeal found that it was error to have included

9 the two withdrawn instructions in the packet of written instructions delivered to

10 the jury, but rejected Petitioner's claim because it determined that the error did

11 not prejudice him.  The court explained:

12 While both sides to this appeal agree that CALCRIM Nos. 361 and 375 had been withdrawn by counsel and were not read to the jury,
13 they disagree whether the record sufficiently documents that these instructions were nevertheless delivered to the jury in the packet of
14 written instructions given to it at the commencement of deliberations. We conclude that the record supports appellant's
15 assertion that these two withdrawn instructions were delivered to the jury as part of its instruction packet. Both CALCRIM Nos. 361
16 and 375 are contained in the packet on instructions titled "JURY INSTRUCTIONS GIVEN," and are absent from that packet titled
17 "JURY INSTRUCTIONS NOT GIVEN." (Original capitalization.)

18 This having been the case, it was error for the court to have included these withdrawn instructions in the packet of written
19 instructions delivered to the jury at the commencement of its deliberations. " 'It has long been the law that it is error to charge
20 the jury on abstract principles of law not pertinent to the issues in the case. [Citation.] The reason for the rule is obvious. Such an
21 instruction tends to confuse and mislead the jury by injecting into the case matters which the undisputed evidence shows are not
22 involved.' (People v. Jackson (1954) 42 Cal.2d 540, 546–547....)" (People v. Robinson (1999) 72 Cal.App.4th 421, 428.)
23
However, that does not end the matter. Appellant must show
24 prejudice, and we agree with respondent that he has not done so.

25 Initially we observe that the parties disagree as to what standard of review we must apply to resolve the issue of prejudice. Appellant
26 contends that because the instruction erroneously given included CALCRIM No. 361, where appellant chose not to testify at trial,
27

28 8

that instruction constituted an improper comment on his refusal to testify in violation of his right under Griffin v. California (1965) 380 U.S. 609, 616 (Griffin). Therefore, he argues that reversal is required unless we determine that this error did not contribute to the jury's verdict beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18 (Chapman).) Appellant also asserts that even if the lower standard under People v. Watson (1956) 46 Cal.2d 818, 836 (Watson) applies to the error in giving CALCRIM No. 375, because it is joined with Griffin error, the error was cumulative and the higher standard applies to both. (People v. Woods (2006) 146 Cal.App.4th 106, 117.) Respondent argues that the lower, Watson standard of review applies.

In our estimation, it matters not which standard of review applies in this instance, because we conclude that under either Chapman or the Watson standard, the errors did not prejudice appellant. "[G]iving an irrelevant or inapplicable instruction is generally ' "only a technical error which does not constitute ground for reversal." ' [Citation.]" (People v. Cross (2008) 45 Cal.4th 58, 67.)

Importantly, the court instructed the jury with CALCRIM No. 355, which told them that "[a] defendant has an absolute constitutional right not to testify." The court also instructed the jury on the presumption of innocence, and proof beyond a reasonable doubt. Among the instructions both read and submitted in written form to the jury was CALCRIM No. 200, which stated that "[s]ome of the instructions may not apply depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

Jurors are presumed to follow a court's admonitions and instructions. (Romano v. Oklahoma (1994) 512 U.S. 1, 13 [improper admission of evidence did not deny due process in light of the court's jury instructions about the scope of evidence the jury was to consider]; People v. Harris (1994) 9 Cal.4th 407, 426 [" ' "The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant." ' "].)

There is no evidence to rebut this presumption. We note that the trial court also told the jury that it would provide jury instruction packets for them to take to the jury room and forms that the jurors could use to submit written questions to the court. At no time did the jury ask for clarification about the presence of either instruction included in their packet, or express any confusion about them whatsoever. Also, the prosecutor in closing argument made no argument or comment on the substance of CALCRIM Nos. 361 or 375, that might conceivably have fed any misapprehension or

9

>confusion. We must presume jurors are intelligent persons capable of understanding and applying a commonsense reading of instructions. (People v. Laws (1993) 12 Cal.App.4th 786, 796; People v. White (1987) 188 Cal.App.3d 1128, 1138–1139.)
>
>Also relevant to the issue of potential prejudice is the very language of CALCRIM No. 361, which limits consideration of the failure to explain or deny adverse evidence "[i]f the defendant failed in his ... testimony to explain or deny evidence against him...." The fact that appellant did not testify makes it clear that this instruction does not apply to the circumstances of this trial.
>
>Given all of these circumstances, we have no hesitation in concluding that appellant was not prejudiced by the apparently inadvertent inclusion of two inapplicable instructions in the jury's packet of written instructions.
>
>Our conclusion is further reinforced by the fact that the evidence of guilt was strong. Eric Rojo identified appellant as the person who robbed him without real challenge. His cousin likewise identified appellant as the person they began following shortly after the robbery occurred. Appellant was dressed consistent with Rojo's description given to police when he called them, and appellant had on his person cash close to the amount of that given to him by Rojo. Indeed, appellant did not dispute that he asked for, and took money from Rojo, but instead contended merely that he was panhandling and that Rojo overreacted.
>
>Lastly, dispelling any concern raised by appellant that the jury may have been prejudiced against him for a failure to "explain or deny adverse evidence" is the additional fact that the jury found the personal use of a firearm enhancement "not true." That finding makes it all the more clear that the jury did not impose on appellant any duty to explain what it was that Rojo saw in appellant's hoodie pocket, or why it was not in appellant's jacket as of the time he was later detained. The jury did just what was expected of it—it gave appellant the presumption of innocence and held the prosecutor to prove the case beyond a reasonable doubt.

Williams, 2014 WL 2815587, at \*\*4–7.

The California Court of Appeal's rejection of petitioner's instructional error claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  The state court reasonably determined that any error in including the two withdrawn instructions in the jury's packet did not prejudice petitioner because any error was harmless under

10

the <u>Chapman</u> standard of review applicable on direct appeal, i.e., the court determined that any error was "harmless beyond a reasonable doubt." <u>Chapman</u>, 386 U.S. at 24.[3]

It is now well established that if the state court finds an error harmless under <u>Chapman</u>, as the California Court of Appeal did here, federal habeas relief is not available for the error "unless the state court's harmlessness determination itself was unreasonable." <u>Davis v. Ayala</u>, 135 S. Ct. 2187, 2199 (2015) (quoting <u>Fry v. Pliler</u>, 551 U.S. 112, 119 (2007)).  Thus, a federal court may grant relief only if the state court's harmlessness determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded agreement." <u>Id.</u> (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)).  That simply cannot be said here.

The California Court of Appeal reasonably determined that the jury did not consider the two instructions erroneously included in its packet of written jury instructions – CALCRIM No. 361 (Failure to Explain or Deny Adverse Testimony) and CALCRIM No. 375 (Evidence of Uncharged Offense to Prove Identity, Intent, Common Plan, etc.).  The court noted that the trial court instructed the jury that "[s]ome of the instructions may not apply depending on your findings about the facts of the case," Rep.'s Tr. at 220 (CALCRIM No. 200), and that a "defendant has an absolute right not to testify," <u>id.</u> at 228 (CALCRIM No. 355).  The trial court also instructed the jury not to "consider for

---

[3] While the <u>Chapman</u> standard applies to criminal convictions challenged on direct appeal, the less strict <u>Brecht</u> standard applies to state criminal convictions challenged on federal habeas corpus.  <u>See Brecht</u>, 507 U.S. at 637-38.  A state prisoner is not entitled to federal habeas relief unless the trial error resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict.  <u>Id.</u> at 637.

11

any reasons at all the fact that the defendant did not testify." Id. at 229. Given that petitioner did not testify and that no evidence of uncharged offenses was presented, the court of appeal reasonably found that the jury followed its instructions and did not consider the two inapplicable instructions in their packet. Cf. Weeks v. Angelone, 528 U.S. 225, 234 (2000) (a jury is presumed to follow its instructions). Additionally, the court of appeal reasonably found that the jury did not consider the two inapplicable instructions in their packet because the jury did not any seek clarification about them and because counsel did not discuss them in their arguments to the jury. The instructions at issue were clearly inapplicable. Importantly, the court of appeal reasonably determined that petitioner was not prejudiced by the two inapplicable instructions in the jury's packet because the evidence against him was strong – Rojo identified petitioner as the man who robbed him and Jaime identified him as the man he and Rojo pursued shortly after the robbery, and petitioner had the money he had taken from Rojo on him when he was arrested. Under the circumstances, it cannot be said that the inclusion of the two irrelevant instructions in the jury's packet of written instructions had a "'substantial and injurious effect or influence in determining the jury's verdict,'" Brecht, 507 U.S. at 637 (citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)), much less that the state court's harmlessness determination was "unreasonable," Davis, 135 S. Ct. at 2199 (citation omitted). Petitioner is not entitled to federal habeas relief on his instructional error claim. See id.

//

//

//

//

12

**CONCLUSION**

After careful review of the record and pertinent law, the court is satisfied that the petition for a writ of habeas corpus must be DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED because petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED: March 2, 2016

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.15\Williams, K.15-3069.denial.final.wpd

13